# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SALVATORE TERMINI, | ) |
| Plaintiff, | ) CIVIL ACTION |
| v. | ) No. 19-2196-KHV |
| GROUP 1 AUTOMOTIVE INC. and GPI KS-SH, INC., | ) |
| Defendants. | ) |

## MEMORDANDUM AND ORDER

Salvatore Termini filed suit against his former employer, Group 1 Automotive Inc. and GPI KS-SH, Inc. d/b/a Shawnee Mission Hyundai, alleging that defendants retaliated against him by terminating his employment after he filed a worker's compensation claim. This matter comes before the Court on Plaintiff's Motion To Compel Arbitration (Doc. #28) filed August 20, 2019. For reasons set forth below, the Court sustains plaintiff's motion.

## Factual Background

Defendants employed plaintiff from June 15, 2018 to November 15, 2018. Defendants' Response In Opposition To Plaintiff's Motion To Compel Arbitration (Doc. #31) filed September 3, 2019 at 1. On June 13, 2018 plaintiff signed an employee handbook which contains an arbitration provision pursuant to the Federal Arbitration Act ("FAA"). Employee Acknowledgment And Agreement ("Arbitration Agreement"), attached as Exh. A to Defendants' Response (Doc. #31). On March 12, 2019, plaintiff filed a complaint for retaliatory discharge in state court and defendants timely removed the action to this Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332. Notice of Removal (Doc. #1) filed April 19, 2019.

On June 24, 2019, defendants produced their Initial Disclosures under Fed. R. Civ. P. 26. Defendants' Response (Doc. #31) at 3. Although plaintiff signed the Arbitration Agreement during his employment, he asserts that he was not aware of the agreement until after he reviewed defendants' initial disclosures. See Plaintiff's Reply To Defendants' Response To Plaintiff's Motion To Compel Arbitration (Doc. #33) filed September 17, 2019 at 16. On June 26, 2019, plaintiff emailed defendants and asked if there was "any reason we should not stop everything and arbitrate this matter." 6.27.2019 Email, attached as Exh. C to Defendants' Response (Doc. #31). On June 27, 2019, the parties held a conference call to discuss the Arbitration Agreement. See Defendants' Response (Doc. #31) at 3. The parties dispute the substance and outcome of the conference call. Plaintiff asserts that the parties discussed jurisdictional issues related to the arbitration provision. See Plaintiff's Reply (Doc. #33) at 6-8. Defendants assert that the parties made an oral contract agreeing not to enforce the arbitration provision. See Defendants' Response (Doc. #31) at 3-4. As evidence, defendants provide a follow-up email sent to plaintiff on June 27, 2019, which summarizes defendants' interpretation of the conference call:

> [T]his will confirm our conversation earlier today. Defendants have no objection to proceeding with this case in federal court . . . and agree to waive any objection that they might have to doing so as a function of the Arbitration Agreements that Mr. Termini previously signed. We further agree that we will not, at some later point in time, seek to enforce the provisions of the Arbitration Agreement. As a result, I believe that the parties now are in agreement that there is no impediment to proceeding with our pending case in the District of Kansas.

6.27.2019 Email, attached as Exh. C to Defendants' Response (Doc. #31). Plaintiff never responded to this email. See Defendants' Response (Doc. #31) at 4; Plaintiff's Reply (Doc. # 33) at 6.

On August 20, 2019, plaintiff filed this motion seeking enforcement of the Arbitration Agreement. Plaintiff's Motion (Doc. #28). Defendants do not dispute the validity of the

Arbitration Agreement; rather, they dispute whether the agreement is enforceable. Defendants urge the Court not to enforce the Arbitration Agreement because plaintiff (1) made an oral agreement not to enforce the Arbitration Agreement; (2) explicitly waived his right to arbitration during the conference call on June 27, 2019; and (3) implicitly waived his right to arbitration through his conduct surrounding this litigation. Plaintiff denies the existence of an agreement not to enforce arbitration and claims that defendants have not met their burden to show that he waived his right to arbitration. For reasons stated below, the Court sustains plaintiff's motion to compel arbitration.

**Legal Standard**

Federal policy favors arbitration agreements and requires the Court to rigorously enforce them. Shearson/Am. Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)); see also Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119, 122-23 (2001) (arbitration agreements in employment contracts generally enforceable). Normally, on a motion to compel arbitration under the FAA, the Court applies a strong presumption in favor of arbitration. ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995) (FAA evinces strong federal policy in favor of arbitration); see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (court should resolve any doubts concerning scope of arbitrable issues in favor of arbitration).

The question of arbitrability – whether the parties agreed to arbitrate a particular dispute – is an issue for judicial determination. AT & T Techs., Inc. v. Comm'n Workers of Am., 475 U.S. 643, 649 (1986). The enforceability of an arbitration agreement "is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes – but only those disputes – that

the parties have agreed to submit to arbitration." Id.; see also PaineWebber Inc. v. Elahi, 87 F.3d 589, 594-95 (1st Cir. 1996) (arbitration is matter of contract law). Generally, state law principles of contract formation govern whether an enforceable arbitration agreement exists. Hardin v. First Cash Fin. Servs., Inc., 465 F.3d 470, 475 (10th Cir. 2006).

The party seeking to compel arbitration bears the initial burden to present evidence that demonstrates an enforceable agreement to arbitrate. SmartText Corp. v. Interland, Inc., 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003). Once this burden is met, the party opposing arbitration must show a genuine issue of material fact as to the validity or enforceability of the agreement. See id. Essentially, this creates a summary-judgment-like standard which the Court applies in deciding whether to compel arbitration. See Clutts v. Dillard's, Inc., 484 F. Supp. 2d 1222, 1223-24 (D. Kan. 2007) (courts of appeals have uniformly applied summary-judgment-like standard to motions to compel arbitration under FAA).

**Analysis**

Here, the record contains sufficient evidence of an enforceable agreement to arbitrate. The Arbitration Agreement states that the parties will arbitrate any dispute which arises out of plaintiff's termination. See Arbitration Agreement, attached as Exh. A to Defendants' Response (Doc #31). This satisfies plaintiff's obligation under the first step of the burden-shifting framework. Defendants present three arguments why the Court should not enforce the Arbitration Agreement: (1) plaintiff orally agreed not to enforce the Arbitration Agreement; (2) plaintiff explicitly waived his right to arbitration by agreeing not to arbitrate; and (3) plaintiff implicitly waived his right to arbitration through conduct in litigation.

**I.     Whether Plaintiff Contractually Agreed Not To Enforce The Arbitration Agreement**

Defendants assert that during their conference call on June 27, 2019, the parties

contractually agreed not to enforce the Arbitration Agreement. As noted, the Court typically applies a strong presumption in favor of arbitration on a motion to compel arbitration under the FAA. ARW, 45 F.3d at 1462 (FAA evinces strong federal policy in favor of arbitration). The Court applies state contract law to determine whether an arbitration agreement is enforceable. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-84 (2002); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Here, the Court applies Missouri law.[1]

Under Missouri law, the elements of an enforceable contract are: (1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. White v. Pruiett, 39 S.W.3d 857, 862 (Mo. Ct. App. 2001). The disputed element here is mutuality of agreement. Mutuality of agreement requires the parties to have a mutuality of assent, or a meeting of the minds, on the essential terms of the contract. Ketcherside v. McLane, 118 S.W.3d 631, 635 (Mo. Ct. App. 2003). The existence and terms of a contract depend upon "what is actually said and done" by the parties and "not upon the understanding or supposition of *one* of the parties." White, 39 S.W.3d at 862 (emphasis added). Furthermore, an agreement to revoke an existing arbitration agreement requires evidence of the parties' express and clear intent to do so. See Riley, 157 F.3d at 781.

---

[1] Courts sitting in diversity jurisdiction must apply the choice-of-law rules of the forum state to determine what substantive state law applies. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Kansas choice-of-law rules directs the Court to apply the law of the state in which the contract was made. See, e.g., Missouri Pac. R. Co. v. Kansas Gas & Elec. Co., 862 F.2d 796, 798 n.1 (10th Cir. 1988). Defendants claim, and plaintiff does not dispute, that Missouri law applies because the parties made the alleged contract during a telephone conference call while the parties were in their respective offices, both located Missouri. Defendants' Response (Doc. #31) at 6. The Court accepts Missouri as the place of contracting and applies Missouri state law governing the formation of contracts.

Plaintiff disputes defendants' claim that during their conference call on June 27, 2019, the parties agreed not to arbitrate. Plaintiff asserts that because he did not agree, the parties could not have had a meeting of the minds. In support, plaintiff relies on Dobbins v. City Bond & Mortg. Co., 124 S.W.2d 1111 (Mo. 1938). In Dobbins, the Missouri Supreme Court found no mutuality of assent when appellant's evidence "plainly set[ ] out *her* dictation of terms, but her evidence just as plainly failed to show any *acceptance* of her terms by the respondents." Id. at 1115 (emphasis added). Plaintiff also cites Butler v. Mo. Ins. Co., in which the Missouri Supreme Court held that a meeting of the minds could only be satisfied by an express, "distinct intention, common to both" parties. 197 S.W.2d 56, 60-61 (Mo. 1938). Like the insufficient evidence set forth in Dobbins, plaintiff claims that defendants failed to show any evidence of plaintiff's distinct intention to accept the alleged contract not to arbitrate. Plaintiff also points out that defendants' follow-up email to the conference call states that *defendants*, not plaintiff, agree not to enforce the Arbitration Agreement.

Defendants have not shown a genuine issue of material fact with regard to mutuality of assent. Defendants assert that the parties had a meeting of the minds merely because the evidence shows that the parties had "mutuality of the agreement to proceed with adjudicating this matter." Defendants' Response (Doc. #31) at 8. Defendants do not, however, cite authority to support their theory of why mutuality of assent existed. In addition, they do not present evidence that plaintiff expressly agreed not to enforce the Arbitration Agreement. Plaintiff's failure to reply to defendants' follow-up email is insufficient to indicate a meeting of the minds. Moreover, even if plaintiff's lack of response indicated acceptance of the terms in the email, such terms would only bind defendants. The email states that "*defendants* have no objection" to federal court; that

*defendants* "agree to waive" any objections; and that "*we* further agree" not to seek enforcement of the Arbitration Agreement. 6.27.2019 Email, attached as Exh. C to Defendants' Response (Doc. #31) (emphasis added). Defendants fail to demonstrate the clear and express mutual intention of both parties not to enforce the Arbitration Agreement. Therefore, defendants have not shown a meeting of the minds as a matter of undisputed fact or law.

## II. Whether Plaintiff Waived The Right To Arbitration

Defendants argue that the Court should not enforce the Arbitration Agreement because plaintiff has waived his right to arbitration. Like any other contractual right, a party can waive the right to arbitration. Reid Burton Const., Inc. v. Carpenters Dist. Council of S. Colo., 614 F.2d 698, 702 (10th Cir. 1980). The Tenth Circuit has recognized two forms of waiver: (1) intentional relinquishment or abandonment of the right to arbitration and (2) conduct in litigation which forecloses the right to arbitration. BOSC, Inc. v. Bd. of Cty. Comm'rs, 853 F.3d 1165, 1170 (10th Cir. 2017). Courts have "no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends on the facts of each case." Reid Burton, 614 F.2d at 702. The Court must resolve any doubts in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense." Moses, 460 U.S. at 24. Due to the strong policy favoring arbitration, a party asserting waiver of arbitration has a "heavy" burden. Peterson v. Shearson/Am. Exp., Inc., 849 F.2d 464, 466 (10th Cir. 1988); Robinson v. Food Serv. of Belton, Inc., 415 F. Supp. 2d 1221, 1224-25 (D. Kan. 2005).

### A. Whether Plaintiff Intentionally Relinquished Or Abandoned His Right To Arbitration

The first form of waiver is based on a party's subjective intent to waive the right to arbitration. Hill, 603 F.3d at 766. This type of waiver is similar to waiver used in the criminal-

law context and requires "intentional relinquishment or abandonment of a known right." Id. (citing United States v. Olano, 507 U.S. 725, 733 (1993)). While external conduct may reveal such intentional relinquishment, the Tenth Circuit apparently has not yet applied this type of waiver to any case as the basis of its holding. BOSC, 853 F.3d at 1170.

Defendants argue that even if the parties' conference call does not meet the elements of a contract, the conference call shows an intentional relinquishment or abandonment of plaintiff's right to arbitration because the parties agreed not to enforce the Arbitration Agreement. Defendants compare this case to a case from the U.S. Court of Appeals for the Second Circuit, which states that waiver requires conduct that reflects a "positive and unequivocal election to ignore" the right to arbitration. Zhang v. Wang, 317 F. App'x 26, 28 (2d. Cir. 2008). The crux of defendants' argument rests on the existence of plaintiff's alleged agreement not to arbitrate. The foregoing analysis regarding mutuality of assent is relevant here. As noted, defendants have not provided evidence to show a genuine dispute of material fact whether plaintiff agreed not to enforce the Arbitration Agreement, let alone evidence that reflects plaintiff's "positive" and "unequivocal" election to ignore his right to arbitrate.

Defendants also argue that plaintiff's participation in litigation indicates an intentional relinquishment of plaintiff's right to arbitration. Participation in litigation, standing alone, does not constitute a categorical waiver of such a right. See BOSC, 853 F.3d at 1173 (rejecting bright-line rule of waiver when party seeks arbitration after filing lawsuit). Therefore, defendants have not shown that plaintiff intentionally relinquished or abandoned his right to arbitration.

**B.    Whether Plaintiff's Conduct In Litigation Forecloses His Right To Arbitration**

The second form of waiver occurs when a party's conduct over the course of litigation forecloses his right to switch to arbitration of the dispute. See Alwert v. Cox Communs., Inc.,

835 F.3d 1195, 1205 (10th Cir. 2016). This type of waiver is more common and can occur regardless of intent. Id. The question of waiver "depends upon the facts of each case." Reid Burton, 614 F.2d at 702.

The Tenth Circuit examines the following factors to determine whether a party has waived the right to arbitration: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked"; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a party seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether "important intervening steps" had taken place, such as "taking advantage of judicial discovery procedures not available in arbitration;" and (6) whether the delay "affected, misled, or prejudiced" the opposing party. Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1489 (10th Cir. 1994) (quoting Peterson, 849 F.2d at 467-68) (alterations in original).

These factors are not exclusive or exhaustive; nor should courts apply them mechanically. Hill, 603 F.3d at 773. Instead, they "reflect principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration." Id. The overarching consideration is "whether the party now seeking arbitration is improperly manipulating the judicial process." BOSC, 853 F.3d at 1174. This may occur when litigation has proceeded too far, so that switching to arbitration would create "significant inefficiencies" or cause "prejudice to opposing parties." Cox, 835 F.3d at 1205.

The party asserting waiver has a "heavy burden" of persuasion. Peterson, 849 F.2d at 466. To determine whether a party met this burden, the Court must give substantial weight to the "strong

federal policy" in favor of arbitration.  Metz, 39 F.3d at 1488.  Any doubts regarding plaintiff's waiver should be resolved in favor of arbitration.  See Cox, 835 F.3d at 1205; Moses, 460 U.S. at 24-25 (presumption in favor of arbitration applies to allegation of waiver).

### 1. Whether Conduct Is Inconsistent With The Right To Arbitration

Under the first Peterson factor, the Court examines whether plaintiff's actions are inconsistent with the right to arbitration.  A party can take *some* actions inconsistent with its right to arbitration, such as filing a claim and submitting responsive pleadings.  See BOSC, 853 F.3d at 1174.  This factor requires consideration of the totality of conduct.  See, e.g., Hill, 603 F.3d at 766 (analyzing Brown v. Dillard's, Inc., 430 F.3d 1004 (9th Cir. 2005) (employer acted inconsistently when it ignored employee's multiple requests for arbitration, but demanded arbitration once employee filed suit)); MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp. Inc., 886 F.2d 1249, 1261 (10th Cir. 1989) (party acted inconsistently when it engaged in "extensive" litigation and delayed arbitration request until after trial was completed).  Filing a motion for judicial review on the merits indicates "inconsistent" conduct and may foreclose a party's right to arbitration.  See Hill, 603 F.3d at 766 (citing Hooper v. Advance Am., Cash Advance Ctrs., 589 F.3d 917, 919 (8th Cir. 2009) (finding waiver when party filed motion to dismiss and tried to preserve right to arbitrate if court rejected motion)); see also Khan v. Parsons Global Services, Ltd., 521 F.3d 421 (D.C. Cir. 2008) (finding waiver when party moved to compel arbitration after court denied motion for summary judgment).

Defendants assert that plaintiff's "overt" conduct is "plainly" inconsistent with his right to arbitrate.  First, defendants argue that the parties "specifically and intentionally" agreed not to enforce the Arbitration Agreement during their conference call.  As noted above, on this record,

defendants have failed to demonstrate that plaintiff accepted such an agreement. Defendants also argue that plaintiff's litigation conduct is inconsistent with his right to arbitration, such as answering and serving discovery, engaging in settlement discussions and proposing a mediator pursuant to a court order. Although these actions indicate *some* conduct inconsistent with plaintiff's right to arbitration, plaintiff has also demonstrated conduct which is *consistent* with his right to arbitration. Once plaintiff became aware of the Arbitration Agreement, plaintiff emailed defendants and indicated his desire for arbitration. See 6.27.2019 Email, attached as Exh. C to Defendants' Response (Doc. #31). Plaintiff also proposed a mediator and dates for potential mediation, indicating his interest in alternative dispute resolution. See 8.19.2019 Email, attached as Exh. E to Defendants' Response (Doc. #31). Furthermore, plaintiff has not filed a motion for judicial review on the merits. Therefore, under this factor, plaintiff's conduct weighs only slightly in favor of waiver.

### 2. Whether The "Litigation Machinery Has Been Substantially Invoked"

The second factor asks whether the party opposing waiver has substantially invoked the "litigation machinery." Metz, 39 F.3d at 1489. The length of time between filing a claim and demanding arbitration does not itself establish waiver. Hill, 603 F.3d at 775. The "critical question is what was happening in litigation" during that time. Id.; see also MidAmerica, 886 F.2d at 1261 (waiver when party "fully and effectively invoked" litigation machinery by waiting to demand arbitration until after completion of one trial and resolution of post-trial motions); Strong v. Davidson, 734 F. App'x 578, 583 (no waiver when party only "partially invoked" litigation machinery because dispute was at "front end" of litigation and discovery was still open); Patten Grading, 380 F.3d at 200 (no waiver when parties had not substantially invoked litigation

despite exchange of written discovery, including interrogatories and requests for production, participation in court-ordered mediation, and reopening of discovery for another month).

Defendants argue that plaintiff has substantially invoked the litigation machinery by participating in planning and scheduling conferences, implementing protective orders, exchanging discovery and participating in the Court's alternative dispute resolution process. The Court is not persuaded, however, that this constitutes "substantial" utilization of the judicial process. Discovery is not yet complete, the Court has not yet set a trial date and the parties have only participated in court conferences and proceedings required at the front end of litigation. See, e.g., Hill, 603 F.3d at 775-76 (finding "very little" had happened in litigation when trial date set in eleven months, discovery was open for another five months and parties had exchanged Rule 26 disclosures). Therefore, this factor does not support waiver.

### 3. Whether Arbitration Was Requested Close To Trial Or Had Been Delayed For A Long Period Of Time

As to the third Peterson factor, the Court considers whether a party either requested arbitration close to the trial date or delayed for a long period before seeking a stay. Courts typically do not find waiver unless the trial date is imminently approaching, even if a delay of several months exists between filing suit and demanding arbitration. See, e.g., BOSC, 853 F.3d at 1175 (no waiver for three-month delay when no trial date near); Patten Grading, 380 F.3d at 203, 205 (no waiver for eight-month delay and only four-month delay after party learned of arbitration agreement through discovery); J & S Const. Co., Inc. v. Travelers Indem. Co., 520 F.2d 809, 809-10 (1st Cir. 1975) (no waiver for 13-month delay); cf. MidAmerica, 886 F.2d at 1261 (waiver for 20-month delay); Peterson, 849 F.2d at 468 (waiver when arbitration requested five

weeks prior to rescheduled trial date and parties would have already gone to trial had it not been rescheduled).

Defendants assert that plaintiff's five-month delay between filing suit and compelling arbitration supports waiver under this factor. However, as noted above, courts have enforced arbitration agreements for delays much longer than five months. See, e.g., J & S, 520 F.2d at 809-10 (13 months). Furthermore, some courts have calculated delay based on when a party discovered the existence of an agreement to arbitrate. See, e.g., Patten Grading, 380 F.3d at 205 (party unaware of arbitration agreement until receipt of discovery and only two-month delay after party discovered the agreement). Here, plaintiff became aware of the arbitration agreement only two months prior to filing this motion. Furthermore, the Court has not yet scheduled a trial date, discovery remains open until November 15, 2019 (almost three months after plaintiff filed this motion) and the pre-trial conference is not scheduled until December 4, 2019 (almost four months after plaintiff filed this motion). These facts do not support waiver under this factor.

### 4. The Fourth And Fifth Peterson Factors Do Not Apply

Defendants state that the fourth and fifth Peterson factors do not apply in this case because defendants did not file a counterclaim (fourth factor) and the parties have not conducted "important intervening steps" that warrant assessment (fifth factor). The Court agrees. See, e.g., BOSC, 853 F.3d at 1175 (important intervening steps could include participation in discovery procedures unavailable in arbitration); Patten Grading, 380 F.3d at 200 (no waiver without evidence that documents produced in discovery would be unavailable in arbitration or that other party had gained strategic advantage through discovery requests).

### 5. Whether Defendants Have Been Affected, Misled Or Prejudiced

The sixth Peterson factor asks whether a delay affected, misled or prejudiced the opposing party. Prejudice is described as "inherent unfairness – in terms of delay, expense, or damage to a party's legal position." Cox, 835 F.3d at 1208-09 (internal quotation marks omitted); see also Strong, 734 F. App'x at 583 (finding prejudice because second arbitration would add further delay to case that "dragged on for years" and would require parties to incur over $12,000 in additional fees that had already been paid in first arbitration). The party opposing waiver must also show that its prejudice is *significant*. Hill, 603 F. 3d at 775 (party failed to show how he was burdened "significantly" more than he would have been had dispute gone to arbitration at outset); Cox, 835 F. 3d at 1206 (similar).

Defendants assert that plaintiff intentionally or unintentionally misrepresented that he would not seek to enforce the Arbitration Agreement. Defendants claim this "midstream" change of course misled them because they had already begun to prepare in earnest for trial. Additionally, defendants assert that switching to arbitration would result in unnecessary delay based on the amount of time it takes to (1) choose an arbitrator; (2) find time on the arbitrator's calendar; (3) resume written discovery and take depositions; and (4) arbitrate plaintiff's claims.

Whether or not it was intentional, plaintiff's conduct surrounding the conference call misled defendants. Defendants apparently believed that the parties agreed to proceed in litigation, as indicated by their follow-up email to plaintiff. Defendants are undoubtedly inconvenienced, but waiver requires more than mere inconvenience. Defendants must demonstrate how they would be *significantly* prejudiced because arbitration would create an "inherently" unfair delay, expense or damage to their legal position. See Hill, 603 F. 3d at 775; Cox, 835 F.3d at 1208-09.

Although defendants may have already begun to prepare for trial, they have not demonstrated how such preparations are substantially burdensome, duplicative, or expensive than preparations that would be needed for arbitration. See, e.g., Hill, 603 F. 3d at 775; Cox, 835 F. 3d at 1206. Furthermore, it seems unlikely that defendants had begun substantial trial preparation so far in advance of a trial date which has not even been set.

Similarly, defendants fail to demonstrate how arbitration would cause significantly more delay than litigation. Defendants require all employees to submit to arbitration; it therefore seems likely they have knowledge and experience about the process of choosing an arbitrator and scheduling arbitration. Defendants do not suggest any time estimates for the alleged delay, so the Court cannot evaluate whether arbitration would cause substantially more delay than litigation. Defendants also claim that arbitration will cause a delay based on the time it will take to complete discovery, take depositions and complete the actual arbitration. Litigation, however, would also entail the same, or similar, actions.

Defendants have not satisfied its heavy burden of demonstrating that plaintiff's conduct foreclosed his right to arbitration. On balance, the Peterson factors weigh against waiver, especially in light of the strong federal presumption in favor of enforcing arbitration agreements. Therefore, the Court finds no genuine issue of material fact whether plaintiff waived his right to arbitration.

## **Conclusion**

Plaintiff has demonstrated a valid and enforceable agreement to arbitrate. Defendants have not persuaded the Court that plaintiff agreed not to seek arbitration, or that he somehow

waived his right to arbitration. Accordingly, the parties must arbitrate this dispute pursuant to the Arbitration Agreement.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Arbitration (Doc. #28) filed August 20, 2019 is **SUSTAINED. Starting November 1, 2019, and at six-month intervals thereafter, the parties shall file a joint report to inform the Court of the status of arbitration.**

Dated this 25th day of October, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge